JOHN L GANNON # 1975
Attorney at Law
2309 Mountain View Drive #174
Boise, Idaho 83706
208-433-0629
Attorney for Plaintiff
johngannon200@gmail.com

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SUSAN CHEW; MARIANNE "MUFFY" DAVIS )<br>)<br>) Plaintiffs )<br>)<br>v )<br>)<br>THE LEGISLATURE OF THE STATE OF )<br>IDAHO; SCOTT BEDKE in his capacity as )<br>ADMINISTRATOR OF THE ),<br>HOUSE OF REPRESENTATIVES )<br>)<br>Defendants )<br>) | CASE NO.<br><br>AFFIDAVIT OF MELISSA WINTROW |

STATE OF IDAHO )

County of Ada )

MELISSA WINTROW being first duly sworn deposes and says:

Until December 4, 2020, I was a member of the House of Representatives from District 19 which includes much of the area in Boise that is North of the Boise River. I have been a member of the Governor of Idaho's Coronavirus Financial Advisory Committee since April, 2020. The Committee has a website and posts our general charge and minutes on that site. I have reviewed it and it is generally accurate to the best of my knowledge and belief. The site may be accessed at: https://coronavirus.idaho.gov/coronavirus-financial-advisory-/#:~:text=Governor%20Brad%20Little%20signed%20an,fight%20the%20COVID%2D19%20pandemic.

AFFIDAVIT OF MELISSA WINTROW                                             1

The Committee is charged with advising the Governor how to distribute funds. The charge from the Governor as stated at the website, and in accord with my understanding part of the charge is:

> "The Governor's Coronavirus Financial Advisory Committee will make recommendations to ensure the federal funds are appropriately prioritize and efficiently distributed across state, local and tribal governments. It also will play a critical oversight role to ensure the federal funds are used judiciously and appropriately."

The Committee recommended and–based upon my participation in the Committee–I have understood that $1,256,134 plus an additional $20,000 for closed captioning in funds were appropriated to the Idaho Legislature. The recommendation was made at the meeting on July 15, 2020. These are the CFAC minutes from 7/15/20 which were approved, with my vote, by the Committee:

> The purpose of this CFAC meeting was to hear one agenda item presented by Legislative Services Chairman Adams started the meeting at 3:01pm with all members present except Dennis Johnson. Eric Milstead of Legislative Services Office presented the ask from legislative services to bolster IT services and equipment at the Idaho Statehouse for the coming working groups, organizational session, and beyond. This request would help the legislature stream its committees and meetings through Idaho Public TV to the public by putting additional video cameras in each of the committee rooms – this would be an upgrade from currently only having two committee rooms with video camera capacity. This work will support public access and engagement in the legislative process while social distancing guidelines are in order. Senator Bair moved to support the request as proposed, seconded by Shawn Keough. Representative Wintrow made an alternate motion that moved to support the request as proposed along with provisions to ensure that the interim work was presented with closed captioning, totaling an extra $20,000 for the project. Matt Newton seconded the alternate motion. The alternate motion was voted on first and passed unanimously.

Part of our charge from the Governor is to carefully examine each proposed recommendation and to understand how the money will be spent. The money was to be spent on programs and services directly impacted by COVID-19, were not originally

AFFIDAVIT OF MELISSA WINTROW 2

budgeted, and would be spent by December 31, 2020. The Chair was consistent in questioning proposals to be sure that each met the federal guidelines before we approved funds.

As a House member, I participated in a working group with Judiciary and Rules to discuss legislation regarding civil liability; the working group met using an electronic platform that was supported by the appropriation made on July 15, 2020.

I also served on the House Judiciary and Rules Committee until December 4, 2020 and I was present and participated in the meetings it held on August 24 and August 25. Plaintiff Marianne "Muffy" Davis is also a member of the committee and she was present and participated.

I arrived at the Idaho Statehouse just in time for the House session to begin where I saw the entire gallery full of people who were being quite loud and had to be reminded by the Speaker to act civilly and maintain appropriate decorum. I remember being surprised by this as I was told that the Speaker had arranged for the gallery to be used by the Minority party members to physically distance off the floor and would then come back to the floor for a vote. When the House session concluded, legislators were dismissed to attend their respective committees. I left the House floor to go to the Judiciary and Rules Committee hearing room. I arrived on the ground floor and saw a very large group of people (30-40) who were not wearing masks and were not physically distancing. People were milling around everywhere. I was wearing a mask and trying to adhere to CDC safety protocols. I could not get through the hallway safely, so using my keycard, I entered the committee room entry way and made my way through the private hallway behind the committee rooms to enter the committee room from the rear entrance.

When I arrived at the committee room, I could hear a lot of noise emanating from the hearing room, people yelling very loudly. When the door opened, I saw a packed hearing room with people without masks and yelling at one of the State Police officers. At that point, I decided it wasn't safe to enter such a crowded room of unmasked people, and the legislators in the room started to leave. I heard the chair indicate that we would go to the Lincoln auditorium where we would conduct our business instead. I had the impression that the doors would be locked, and it would just be the committee in the room. I got to the committee room and saw many chairs with signs on them indicating that they were not to be used to provide physical distancing. I took a seat on the very end of the front row. I believe that Muffy Davis was two seats away from me to provide for physical distancing. As I sat there, people started to flood into the room and soon every seat was taken; there was no physical distancing observed and most people I saw were not wearing masks. As the committee started, I did not feel safe, so I called House Minority leader, Rep. Ilana Rubel, to let her know that I didn't feel safe in such a crowded room where no one was adhering to physical distancing or masks in addition to the fact that we were well over meeting capacity for Stage 3 of the local public health district orders. She suggested I take a privilege as a courtesy to let the chair know that I would be leaving the committee due to safety concerns. I took a privilege and let the chair know that I would be leaving. Once I did that, the crowd screamed and jeered at me. I left the hearing room and went to the Speaker's Office. I spoke to Speaker Bedke about my concerns for safety and that according to our rules, I should be allowed to participate and vote in order to represent my district. After some discussion, he agreed to a "compromise" to allow me to stream the committee hearing and then enter to vote. I maintained my objection that by

AFFIDAVIT OF MELISSA WINTROW 4

sitting outside the committee room, I would be prevented from asking questions and participating, meaning I couldn't represent my constituents. I went to the cafeteria and began streaming the committee hearing that was being held in the Lincoln Auditorium. On day two of the hearings, I was going to rejoin the committee if fewer people were there, so as the committee started, I opened the rear door to enter and saw a commotion in the front of the room and heard people yelling, so I left again. After some time, the committee went back to the Judiciary and Rules Committee room where the committee chairs were physically distanced. The doors were locked so no one could enter. I helped the Speaker and the Committee Chair remove chairs to limit the number of people in the room. After that, I believe that no more than 8-10 people were permitted in the room at a time and people were allowed in as they were ready to testify. I was sitting on the very end nearest to the audience; I felt much better with fewer people, but there were still people entering the room not wearing masks and most of the committee was not wearing masks. The committee proceeded with the hearings and concluded business where we then returned to the House floor.

Dated this 6th day of January, 2021

By _____
MELISSA WINTROW

SUBSCRIBED AND SWORN TO before me this 6th day of January, 2021

By _____
NOTARY PUBLIC FOR IDAHO
Residing at Boise, Idaho
My Comm Exp: 11/6/2024

[Notary Seal: BRADLEY V. SNEED, NOTARY PUBLIC, Comm No. 48531, STATE OF IDAHO]

AFFIDAVIT OF MELISSA WINTROW　　　　　　　　　　　　　　　　　　　　5