UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SUSAN CHEW, and MARIANNA "MUFFY" DAVIS,<br><br>　　　Plaintiffs,<br><br>　　v.<br><br>THE LEGISLATURE OF THE STATE OF IDAHO, and SCOTT BEDKE in his official capacity as Speaker of the House of Representatives,<br><br>　　　Defendants. | Case No. 1:21-cv-00014-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

This case deals with important issues related to disability rights, the COVID-19 pandemic, and the format of the current Idaho State legislative session. Plaintiffs Susan Chew and Marianna Davis are members of the Idaho State Legislature House of Representatives. Chew has type II diabetes and hypertension. Davis is a paraplegic and suffers from diminished lung capacity due to diaphragm damage. Due to health concerns related to their respective conditions and COVID-19, Chew and Davis seek two accommodations under the Americans with Disabilities Act ("ADA"): that they be able to participate remotely in the current legislative session and that they be provided self-contained offices or workplaces. In the matter before the Court, Chew and Davis seek the extraordinary remedy of a temporary restraining order ("TRO"). In short, Chew and Davis

ask the Court to reach its hand into the business of the Idaho House of Representatives and mandate that it provide the accommodations sought.

While Chew and Davis may ultimately prevail upon a full adjudication of the merits of their claims, they have not shown a likelihood of success on the merits or a likelihood of irreparable harm sufficient for this Court to grant their emergency requested relief. Accordingly, the Court DENIES Chew and Davis's Motion for a TRO. Dkt. 2.[1]

## II. LEGAL STANDARD

A plaintiff seeking a preliminary injunction or a TRO must establish (1) that she is likely to succeed on the merits, (2) that she is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in her favor, and (4) that an injunction is in the public interest." *E.g.*, *CTIA-The Wireless Ass'n v. City of Berkeley*, 854 F.3d 1105, 1114 (9th Cir. 2017) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Stuhlbarg Int'l Sales Co. v. John D. Brushy & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A preliminary injunction and a TRO generally serve the same purpose of "preserv[ing] the status quo ante litem pending a determination of the action on the merits." *L.A. Mem'l Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1200 (9th Cir. 1980);

---

[1] Chew and Davis also pursue their case under the Rehabilitation Act of 1973. 29 U.S.C. §§ 701, et However, it is unclear whether that Act even applies because Chew and Davis have not clearly shown that the federal funds previously received still provide a basis to invoke the Act. *See* 29 U.S.C. § 794(a); *Zimmerman v. Or. Dep't of Justice*, 170 F.3d 1169, 1181 (9th Cir. 1999); *Kohn v. State Bar of Cal.*, No. 20-cv-04827-PJH, 2020 WL 6290382, at *9 (N.D. Cal. Oct. 27, 2020). Moreover, the same reasons for denying the TRO motion as to Chew and Davis's ADA claim support denying it to as to their Rehabilitation Act claim. Therefore, the Court refers only to the ADA claim in this Order. *See Bay Area Addiction Research & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 731 (9th Cir. 1999) ("Congress has instructed that the ADA is to be interpreted consistently with the Rehabilitation Act."); *see also* 29 U.S.C. § 794(d).

*see also* Fed. R. Civ. P. 65.

Nevertheless, certain circumstances warrant divergence from the status quo. Preliminary relief may take one of two forms: (1) prohibitory which prohibits "a party from taking action and preserves the status quo pending a determination of the action on the merits" and (2) mandatory which "orders a responsible party to take action." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma BmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (cleaned up). "A mandatory injunction goes well beyond simply maintaining the status quo pendente lite and is particularly disfavored." *Id.* (cleaned up). "In general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Id.* (cleaned up).

A key difference between a TRO and a preliminary injunction is its respective duration. A TRO typically does not last for more than 28 days without good cause, while a preliminary injunction may extend until the end of the lawsuit, which could be months, if not years. *NAVEX Global, Inc. v. Stockwell*, No. 1:19-cv-00382-DCN, 2019 WL 5654988, at *1 (D. Idaho Oct. 31, 2019) (citing *Innovation Law Lab v. Nielsen*, 310 F. Supp. 3d 1150, 1156 n. 1 (D. Or. 2018)). It is well-established that whether a preliminary injunction or a TRO should be issued is committed to the sound discretion of the district court. *Jimenez v. Barber*, 252 F.2d 550, 554 (9th Cir. 1958).

### III. DISCUSSION

The parties raise various issues in their briefing on the current motion. Some of these arguments, however, need not be discussed at length in this Order. Therefore, the Court

MEMORANDUM DECISION AND ORDER - 3

begins by narrowing the issues before it. For starters, what Chew and Davis seek here is a mandatory TRO because the status quo is for the legislative session to proceed without the accommodations[2] sought. *Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879. Thus, Chew and Davis have an even more onerous burden, one which the Court finds they have not met on this record and the relevant TRO factors.

Relatedly, in their Response, Defendants offer several reasons for outright dismissal of this case, namely, concerns related to federalism and separation of powers, a lack of standing, and legislative immunity. But the Court deems it unnecessary to rule on those issues at this time because, again, the Court will deny the motion on the grounds that Chew and Davis have not carried their burden of convincing the Court that there is a likelihood of success on the merits or a likelihood, rather than a possibility, of irreparable harm. *Id.*; *see also Winter*, 555 U.S. at 22 (explaining that issuing preliminary relief "only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief").[3]

Additionally, the Court will not discuss the request for isolated office space more fully because it appears that Chew and Davis's concern will be resolved between the

---

[2] "Although Title II of the ADA uses the term 'reasonable modification,' rather than 'reasonable accommodation,' these terms create identical standards" and may be used interchangeably. *McGary v. City of Portland*, 386 F.3d 1259, 1266 n.3 (9th Cir. 2004). The Court does the same in this Order.

[3] Of course, Defendants are free to reassert these arguments in a subsequent motion, which in turn will allow Chew and Davis an opportunity to respond to them. The Court simply withholds a ruling on those issues at this time.

MEMORANDUM DECISION AND ORDER - 4

parties. Chew and Davis will receive such space either when they ask the Minority Caucus leadership for the office space or when Defendant Scott Bedke, upon a refusal of that request, designates such an office for Chew and Davis's use, as he has so represented to the Court. *See* Dkt. 8, at 16; Dkt. 10, at 3 (stating that the parties "are close to agreement" on the issue).[4]

That leaves the Court with explaining why Chew and Davis have not shown they are entitled to a TRO enjoining Defendants to allow them to participate in the legislative session remotely under Title II of the ADA. The Court's analysis turns on the first two TRO factors. The Court will address each in turn.

A. **Success on the Merits**

The first factor of a TRO involves a showing of a likelihood of success on the merits. It is important to note, however, that granting or denying a motion for a TRO is not an adjudication on the merits; rather, it is a preliminary form of relief until the court can reach the merits. *Int'l Ass'n of Machinists & Aerospace Workers v. Nat'l Ry. Labor Conference*, 310 F. Supp. 904, 905 (D.D.C. 1970). In this case, Chew and Davis have not shown a likelihood of success on the merits that their request is a *reasonable* accommodation under

---

[4] One of the problems the Court sees in this case is that the issues are ongoing. The COVID-19 pandemic has affected the entire world and while governments, organizations, and individuals are constantly striving to ensure the health and safety of everyone involved, it does take time to work out the logistics. In this case, it appears that Scott Bedke, the Idaho Legislature, the Idaho Capitol, and others, are fervently trying to do the best they can under the circumstances. The Court does not mean to imply that "working" on the issues absolves Defendants of their duties under the ADA. However, when the issues are still in flux—and by all accounts, actions are being taken to benefit Chew and Davis—the Court finds itself less inclined to grant the instant motion. This also goes to the individualized inquiry under the ADA, which appears to be ongoing.

Title II of the ADA and the Rehabilitation Act.

The ADA prohibits disability discrimination in various contexts. Under Title II, which relates to public services, the ADA specifically states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *see also* 28 C.F.R. 35.130(b)(7)(i). "Public entity" is defined as "any State or local government," among other things. *Id.* § 12131(1)(A).

"The failure to provide [a] reasonable accommodation can constitute discrimination." *Updike v. Multnomah Cty.*, 870 F.3d 939, 951 (9th Cir. 2017) (cleaned up). To succeed on a reasonable accommodation claim under Title II of the ADA, a plaintiff must show that a public entity failed to make reasonable modifications that would accommodate plaintiff's disability without fundamentally altering the nature of program or activity, and that accommodation would have enabled the plaintiff to meet the program's essential eligibility requirements. *See A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1206 (9th Cir. 2016). The ADA does not require an accommodation that an individual requests or prefers; instead, the ADA requires only a reasonable accommodation. *See Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002); *see also Townsend v. Quasim*, 328 F.3d 511, 518 (9th Cir. 2003) ("As the regulatory language makes clear, entities are required only to make *reasonable* changes in existing

policies in order to accommodate individuals' disabilities." (emphasis in original)).[5] "Because the issue of reasonableness depends on the individual circumstances of each case, this determination requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations" sought. *Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 818 (9th Cir. 1999); *see also Crowder v. Kitagawa*, 81 F.3d 1480, 1486 (9th Cir. 1996) ("The determination of what constitutes reasonable modification is highly fact-specific, requiring case-by-case inquiry." (cleaned up)).

Here, at first glance, in this modern age of technology, it appears reasonable to request to participate in the legislative session remotely.[6] However, when the history and context of this case are considered, the request's reasonableness becomes less clear.

First, Chew and Davis were present for the vote on the rules from which they now seek additional accommodations, and they did not oppose them. On December 3, 2020, amid the height of the COVID-19 pandemic, the entire membership of the House unanimously adopted various Idaho House of Representative House Rules ("Rules") that are relevant to this case. These Rules govern mandatory in-person voting, offices, accommodations, and how the Rules may be modified. Plaintiffs were both present at the

---

[5] Where the Court cites an employment ADA case in this Order, it notes that "the 'reasonable accommodation' standard of Title I does not differ from the 'reasonable modification' standard of Titles II and III and thus uses the terms 'interchangeably.'" *Smith v. City of Oakland*, No. 19-cv-05398-JST, 2020 WL 2517857, at *8 n.8 (N.D. Cal. Apr. 2, 2020) (quoting *Wong*, 192 F.3d at 816 n.26).

[6] While certainly not dispositive of whether the request is legally speaking reasonable, or required under the ADA, the Court notes that it has been conducting much of its business via video conferences with great success. The Court therefore does not harbor significant doubts that the Idaho legislature is capable of doing the same. However, the question before the Court is not one of capability or prudence; rather, it is one of legal requirement: Are Defendants legally required to provide the accommodation requested by the laws cited? The answer is unclear at this point.

MEMORANDUM DECISION AND ORDER - 7

meeting in which the Rules were adopted unanimously, and Plaintiffs did not object or dissent. Rule 77 requires these votes to be by a two-thirds majority. Rule 37 allows legislators with a physical impairment to select their seats with priority over everyone except several enumerated legislators in leadership roles. At the heart of this lawsuit, Rule 80 requires legislators to be in their seats on the floor of the House to cast their vote. Not until January 7, 2021, more than a month after the House adopted the Rules for the 2021 session, did Chew and Davis file this suit and move for a TRO. Indeed, Plaintiffs waited until four days before the start of the legislative session to move for a TRO. While not opposing the votes and filing this case at this late hour do not in any way preclude Chew and Davis from claiming they are entitled to the accommodations they seek under the ADA, these facts certainly inform the reasonableness of both their requested accommodation and their requested TRO.[7]

Second, protective measures other than remote participation have been taken to mitigate the risk of COVID-19 exposure during this legislative session. Masks may be worn. Upon request, plexiglass may be installed around the legislators' seats. And as noted, Chew and Davis are allowed to select their seats on the House Floor pursuant to House Rule 37(2) on a high-priority basis, which in turn could assist them in choosing a relatively safer seat. Further, the Idaho State Capitol Commission seems to have been working on addressing Chew and Davis's concerns about public crowds by including a rule against any

---

[7] Relatedly, it is within Chew and Davis's power to bring a vote to the floor to amend these Rules. Although only slightly, this also informs the reasonableness of the requested accommodation.

MEMORANDUM DECISION AND ORDER - 8

interferences with the primary uses of the Capitol during legislative proceedings. Chew and Davis have not established, at this preliminary stage, that these measures were not reasonable. *Larson v. Iboshi*, 441 F. App'x 511, 514 (9th Cir. 2011) (holding that the plaintiff failed to establish alternative accommodations were not reasonable); *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1137 (9th Cir. 2001) ("To prevail under the ADA, Duvall must show that the accommodations offered by the County were not reasonable, and that he was unable to participate equally in the proceedings at issue.").

Third, certain evidence is lacking. These points overlap with the irreparable harm analysis below, but it is worth noting here that Chew and Davis do not argue that any legislator has COVID-19, that anyone specific at the legislative session will somehow expose them to COVID-19, or that they know of a source of COVID-19 which will infect those in attendance at the legislative session. In the absence of these allegations and those outlined below, their request appears less reasonable. *See McMurray v. Brown*, 2020 WL 3118567, at *10 (W.D. Mich. June 12, 2020) (dismissing the plaintiff's claim, in part, because he did not allege that "he was exposed to individuals who were ill with COVID-19").

The case cited by Chew and Davis that the Court found most compelling, *Silver v. City of Alexandria*, 470 F. Supp. 3d 616 (W.D. La. 2020), is both not binding on the Court and distinguishable on several points. In *Silver*, the city council member for whom the court granted a preliminary injunction to appear remotely at city council meetings was in a different situation. Nothing indicates that he participated in adopting the rule of in-person attendance. Nothing indicates that other accommodations had been made, such as mask

wearing, plexiglass, and a priority choice of seat. And the city council member in *Silver* claimed that he could not otherwise attend the meetings if remote attendance was not allowed. Here, certain accommodations have been made, and Chew and Davis have not alleged or argued that they cannot otherwise attend the legislative session. They may not be able to attend in their preferred manner, but they have not argued they will be wholly unable to attend in the absence of other accommodations. Again, while a public entity must make reasonable accommodations, it is not required to make those preferred by plaintiffs. *Zivkovic*, 302 F.3d at 1089. Such *may* be true about the request to participate remotely in this case. The Court cannot say at this juncture.

In short, a request to participate remotely in the legislative session viewed in isolation may appear reasonable. When viewed in the context of the other accommodations provided in this case, however, the fact-intensive question of whether Chew and Davis's request is reasonable becomes hazy. This does not appear to be a case of inaction or thoughtlessness on the part of the Defendants. Given these facts, the Court concludes that there has been an insufficient showing of a likelihood of success on the merits.

**B. Irreparable Harm**

The next factor of a TRO analysis requires a showing that irreparable harm is likely to occur in the absence of the requested relief. On this factor, Chew and Davis's arguments in their motion suffer from several shortcomings. To reiterate, there is no evidence that anyone in the legislature has COVID-19. There is also no evidence that any legislator or other person in attendance will likely expose Chew and Davis to COVID-19. Chew and Davis have not presented scientific, medical, or other statistical evidence to show the

likelihood of contracting COVID-19.

To be fair, it is well-known that some individuals may not know they have COVID-19 due to the slow onset of symptoms or because they are asymptomatic carriers of the virus. This, no doubt, presents a risk to Chew and Davis. Nevertheless, the Court is a court of law and does not have the expertise to analyze these issues without competent and reliable expert evidence regarding, among many things, infection rates and the likelihood of transmission.[8] The Court does not mean to say that such evidence does not exist. It simply is saying that the evidence has not been presented. The Court also does not mean to say that it *knows* that Chew and Davis will not be exposed to COVID-19; rather, there is simply a lack of evidence presented to support a likelihood that they are at a high risk of exposure, especially in light of the accommodations that are being provided (the ability to wear masks, the availability of plexiglass, and the priority in selecting seats).

In short, the Court surely sees a possibility of irreparable harm from being exposed to COVID-19, particularly given Chew and Davis's respective health impairments. Nevertheless, the Court cannot say that it is likely on this record. *See Winter*, 555 U.S. at 22.

## IV. CONCLUSION

The Court is aware of the third and fourth factors of a TRO analysis as it plainly

---

[8] Davis has included a letter from Dr. Jonathan D. Myers in which he asserts that Davis is more likely to have droplets fall on her as she is in a wheelchair. Chew, on the other hand, does not include any comparable evidence. Although Davis presents a stronger case for a likelihood of irreparable harm than Chew, both still do not present sufficient evidence for the reasons stated.

MEMORANDUM DECISION AND ORDER - 11

noted them above. It does not address those factors, however, because Chew and Davis have not made an adequate showing on the first two factors of the TRO standard. Simply put, the Court does not deem it a sound use of its discretion to grant a TRO under these circumstances. It will, therefore, deny the motion and allow the case to proceed in a normal fashion.

## V. ORDER

**IT IS HEREBY ORDERED THAT:**

1. Plaintiffs' Motion for a Temporary Restraining Order (Dkt. 2) is **DENIED**.

DATED: January 12, 2021

David C. Nye
Chief U.S. District Court Judge