William G. Myers III (ISB #5598)
A. Dean Bennett (ISB #7735)
HOLLAND & HART LLP
800 W. Main Street
Suite 1750
Boise, ID 83702-5974
Telephone: (208) 342-5000
Facsimile: (208) 343-8869
Emails:  wmyers@hollandhart.com
         adbennett@hollandhart.com

Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SUSAN CHEW, MARIANNE "MUFFY" DAVIS,<br><br>Plaintiffs,<br><br>vs.<br><br>THE LEGISLATURE OF THE STATE OF IDAHO, SCOTT BEDKE in his capacity as ADMINISTRATOR OF THE HOUSE OF REPRESENTATIVES,<br><br>Defendants. | CASE NO. 1:21-cv-00014-DCN<br><br>**NOTICE OF SUPPLEMENTAL AUTHORITY** |

Defendants hereby give notice of supplemental authority relevant to Defendants' Response in Opposition to Plaintiffs' Motion for Preliminary Injunction (Dkt #14).

Subsequent to Defendants' Response, Defendants became aware of a decision of the U.S. District Court for the District of New Hampshire filed today directly supporting the Defendants' arguments in their Response that they are legislatively immune from Plaintiffs' claims.  (Dkt #14 at 17-19).  The court in the District of New Hampshire denied similarly situated plaintiffs' request for a temporary restraining order or preliminary injunction on that

NOTICE OF SUPPLEMENTAL AUTHORITY - 1

basis. Attached is *Cushing v. Packard, in his official capacity as Speaker of the House for the N.H. House of Representatives*, Order, Dkt. 26, Case No. 21-cv-147-LM (D. N.H. Feb. 22, 2021).

Respectfully submitted this 22nd day of February, 2021.

HOLLAND & HART LLP

By    */s/ A. Dean Bennett*
William G. Myers III, of the firm
A. Dean Bennett, of the firm
Attorneys for Defendant

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 22nd day of February 2021, I filed the foregoing electronically through the CM/ECF system, which caused the following parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

John L. Gannon                  johngannon200@gmail.com
Attorney at Law
2309 Mountain View Drive, #174
Boise, ID 83706

                                                */s/ A. Dean Bennett*
                                         A. Dean Bennett for HOLLAND & HART LLP

16223589_v1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Robert R. Cushing, et al.

    v.

Sherman Packard, in his official capacity as
Speaker of the House for the N.H. House of
Representatives

Civil No. 21-cv-147-LM
Opinion No. 2021 DNH 039 P

**O R D E R**

Seven members of the New Hampshire House of Representatives[1] ("Individual Plaintiffs") and the New Hampshire Democratic Party bring this suit against the Speaker of the New Hampshire House of Representatives. Each of the Individual Plaintiffs has one or more serious health conditions that place him or her at high risk for severe illness or death should he or she contract COVID-19. Plaintiffs allege that the Speaker's failure to allow the Individual Plaintiffs to participate remotely in House sessions violates Title II of the Americans With Disabilities Act (codified at 42 U.S.C. §§ 12131-12134), Section 504 of the Rehabilitation Act (codified at 29 U.S.C. § 794), the Fourteenth Amendment to the United States Constitution, and Part I, Article 11 of the New Hampshire Constitution.

---

[1] The members' names are Robert "Renny" Cushing, David Cote, Kenneth Snow, Katherine Rogers, Paul Berch, Diane Langley, and Charlotte DiLorenzo. Cushing sues in both his individual capacity and as the Minority Leader of the New Hampshire House of Representatives.

Presently before the court is plaintiffs' motion for a temporary restraining order or preliminary injunction (doc. no. 2) compelling the Speaker to permit the Individual Plaintiffs and 23 other House members with serious health conditions to participate remotely in an upcoming session of the House on February 24 and 25, 2021. The court held a hearing on plaintiffs' motion on February 19, 2021.

## STANDARD OF REVIEW

"A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." Granite Trade Sch., LLC v. The N.H. Sch. of Mech. Trades, Inc., 120 F. Supp. 3d 56, 61 (D.N.H. 2015) (quoting Munaf v. Geren, 553 U.S. 674, 689-90 (2008)). A plaintiff seeking a temporary restraining order or a preliminary injunction must show that: (1) he is likely to succeed on the merits of his claim; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities are in his favor; and (4) injunctive relief is in the public interest. Id.; see Nw. Bypass Grp. v. U.S. Army Corps of Eng'rs, 453 F. Supp. 2d 333, 337 (D.N.H. 2006) (explaining that the standard for granting a temporary restraining order is the same as the standard for granting a preliminary injunction). Of these four factors, the first—likelihood of success on the merits—is the most important. Norris ex rel. A.M. v. Cape Elizabeth Sch. Dist., 969 F.3d 12, 22 (1st Cir. 2020). If the plaintiff cannot demonstrate that he is likely to succeed on the merits, the request for a preliminary injunction must be denied. Arborjet, Inc. v. Rainbow Treecare Sci. Advancements, Inc., 794 F.3d 168, 173 (1st Cir. 2015).

2

## BACKGROUND

The following facts are drawn from the parties' statement of undisputed facts (doc. no. 19), from the declarations and exhibits attached to their pleadings,[2] and from testimony elicited at the hearing. As noted, Individual Plaintiffs are members of the New Hampshire House of Representatives and each suffers from one or more serious medical conditions. Defendant is the Speaker of the House and has served in that role since December 2020.[3]

The House has continued to meet in-person for its full legislative sessions since the onset of the COVID-19 pandemic in March 2020. In June 2020, the House convened twice at the Whittemore Center, which is an ice hockey arena at the University of New Hampshire. The House met at the Whittemore Center again on September 16, 2020. On December 2, 2020, the House convened a session outside the Whittemore Center on an athletic field. And on January 6, 2021, the House held a session in a parking lot at the University of New Hampshire with members seated in their cars. House committees, however, have met both remotely and in a hybrid model since the onset of the pandemic and House leadership has researched various methods to implement remote participation in full sessions since at least the summer of 2020.

---

[2] The parties stipulated to the admission of these materials for purposes of ruling on plaintiffs' motion. See doc. no. 21.

[3] The Speaker served as the Acting Speaker until formally elected Speaker on January 6, 2021.

3

The New Hampshire Constitution states that the House has the power to "settle [its] rules of proceedings." N.H. CONST. pt. II, art. 22. House Rule 65 sets forth an order of precedence by which House procedures are determined. See Rule 65: Sources of Authority (N.H.H.R. House Rules 2021-2022).[4] House Rule 65 states that, if a given procedure is not governed by a constitutional provision, another House rule, or "[c]ustom, usage, and precedent," the procedure "shall be derived" from the 2020 edition of Mason's Manual of Legislative Procedure.[5] Rule 786 of the 2020 edition of Mason's Manual provides that, "[a]bsent specific authorization by the constitution or adopted rules of the body, remote participation in floor sessions by members of the legislative body is prohibited." Doc. no. 17-3 at 2.

In the fall of 2020, members of the House twice attempted to amend the House rules to permit remote participation at House sessions. At the December 2020 House session, Representative Bouldin proposed an amendment to the House rules that would require the Speaker to permit members upon request to participate remotely in committee meetings and legislative sessions. The House voted on and rejected this proposal. And at the January 2021 House session, another amendment to the House rules was proposed that would have explicitly

---

[4] Available at http://gencourt.state.nh.us/house/abouthouse/houserules.htm.

[5] At a session of the House on January 6, 2021, the House voted 316-4 to adopt the 2020 version of Mason's Manual as its parliamentary manual for purposes of Rule 65. See N.H.H.R. House Journal No. 2, at 5 (Jan. 6. 2021), available at http://gencourt.state.nh.us/house/caljourns/journals/2021/HJ_2.pdf.

4

permitted virtual meetings of the full House. The House voted on and rejected this proposal as well.

Following the Speaker's announcement that the House session scheduled for January 6, 2021, would take place in a parking lot at the University of New Hampshire, each of the Individual Plaintiffs submitted a written request to him that they be permitted to participate remotely in House sessions. Each Individual Plaintiff stated in his or her request that he or she suffers from one or more underlying medical conditions that substantially increase the risk posed by COVID-19. In addition to Individual Plaintiffs' written requests, other members spoke directly with the Speaker's office regarding remote options for future sessions. And Plaintiff Cushing sent the Speaker multiple letters requesting that House members with disabilities be allowed to participate remotely in House sessions.

However, the Speaker has not granted any members' request for remote participation. In a House Calendar dated February 5, 2021, the Speaker stated: "The House has not adopted a rule which allows it to meet remotely, either wholly or in part, and until such a time as the members adopt such a rule, we are obligated to meet in-person." N.H.H.R. House Calendar Vol. 43, No. 10, at 1 (Feb. 5, 2021).[6] In that same February 5 House Calendar, the Speaker announced that the House would meet at an indoor venue for a session on February 24 and 25. Following this

---

[6] Available at http://gencourt.state.nh.us/house/caljourns/calendars/2021/HC_10.pdf.

announcement, plaintiffs continued their efforts to secure from the Speaker the option of remote participation. They were not successful.

On February 15, plaintiffs filed this action against the Speaker, arguing that his failure to provide remote access to House sessions for members with underlying health conditions violated Title II of the ADA, the Rehabilitation Act, and the Federal and State Constitutions. They contemporaneously filed a motion for a temporary restraining order or preliminary injunction (doc. no. 2) on the basis of their Title II and Rehabilitation Act claims. Plaintiffs' motion seeks injunctive relief that would permit Individual Plaintiffs—together with 23 other named disabled House members—to participate remotely at the upcoming House session on February 24 and 25. Due to the time-sensitive nature of the requested relief, the court ordered expedited briefing and held a hearing on February 19.

## DISCUSSION

As noted, in order to obtain a preliminary injunction or temporary restraining order the plaintiffs must demonstrate that they are likely to succeed on the merits of their claims. The Speaker argues that plaintiffs are not likely to succeed on their claims because House rules prohibit remote participation in floor sessions, and because his enforcement of those rules constitutes a legislative act for which he is entitled to absolute legislative immunity. Plaintiffs disagree and argue both that legislative immunity does not apply and that they are likely to succeed on the merits of their Title II and Rehabilitation Act claims.

If the Speaker is immune from suit, as he asserts, the court cannot reach the merits of plaintiffs' claims. For this reason, the court begins its analysis with legislative immunity.

State legislators have an absolute immunity from suit for legislative acts. Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 28-29 (1st Cir. 1996). The immunity precludes suits for monetary as well as injunctive relief. Supreme Court of Va. v. Consumers Union of the U.S., Inc., 446 U.S. 719, 731-34 (1980). Although legislative immunity for state officials is rooted in common law, it is "essentially coterminous" with the immunity granted to federal legislators under the Speech or Debate Clause of the United States Constitution. Nat'l Ass'n of Soc. Workers v. Harwood, 69 F.3d 622, 629 (1st Cir. 1995) (citing Consumers Union, 446 U.S. at 732-33); see U.S. CONST. art. I, § 6, cl. 1.

"Although not based on the doctrine of separation of powers, as is the constitutional immunity accorded Members of Congress, the state legislative immunity defense nonetheless implicates 'principles of comity and federalism.'" Romero-Barcelo, 75 F.3d at 28 (ellipsis omitted) (quoting Agromayor v. Colberg, 738 F.2d 55, 58-59 (1st Cir. 1984)). Legislative immunity "shelter[s] individual legislators from the distractions and hindrance of civil litigation" so that they can perform their legislative duties "without undue interference" from federal lawsuits. Harwood, 69 F.3d at 629-30; accord, e.g., Scott v. Taylor, 405 F.3d 1251, 1256 (11th Cir. 2005). Indeed, "the time and energy required to defend against a lawsuit are of particular concern" when considering "the part-time citizen-legislator," as is the

7

case here.  Bogan v. Scott-Harris, 523 U.S. 44, 52 (1998).  Legislative immunity also operates "to prevent courts from intruding into precincts that are constitutionally reserved to the legislative branch."  Harwood, 69 F.3d at 628 n.6.

Whether legislative immunity applies in a particular case does not depend on the "the official's identity, or even on the official's motive or intent, but on the nature of the act in question."  State Emps. Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 82 (2d Cir. 2007) (quoting Almonte v. City of Long Beach, 478 F.3d 100, 106 (2d Cir. 2007)); accord Bogan, 523 U.S. at 54-55.  Indeed, even members of the executive or judicial branch may be entitled to legislative immunity for acts taken in legislative capacities.  See Harwood, 69 F.3d at 630; see also, e.g., Bogan, 523 U.S. at 47, 55 (holding that a mayor was entitled to legislative immunity for acts that were "integral steps in the legislative process"); Consumers Union, 446 U.S. at 734 (holding that chief justice of state supreme court was entitled to legislative immunity when he "exercise[d] the State's . . . legislative power" to promulgate ethics regulations for lawyers).  Furthermore, legislative immunity may be claimed not only by government officials, but by governmental entities themselves.  See Consumers Union, 446 U.S. at 734 (holding that "the Virginia [Supreme] Court . . . [is] immune from suit when acting in [its] legislative capacity" to regulate the legal profession); Hall v. Louisiana, 974 F. Supp. 2d 944, 957 (M.D. La. 2013) (concluding that a state legislature was immune from suit under the doctrine of legislative immunity).

8

That said, legislative immunity does not extend to "all conduct relating to the legislative process." United States v. Brewster, 408 U.S. 501, 515 (1972). It applies to acts that form "an integral part of the deliberative and communicative process by which [legislators] participate in . . . House proceedings" and consider legislation. Harwood, 69 F.3d 632 (quoting Gravel v. United States, 408 U.S. 606, 625 (1972)). Legislative immunity also applies to "matters which the Constitution places within the jurisdiction of either house." Romero-Barcelo, 75 F.3d at 29 (quoting Agromayor, 738 F.2d at 59). "It does not cover 'actions that are only casually or incidentally related to legislative affairs.'" Id. (quoting Harwood, 69 F.3d at 630); see, e.g., Hutchinson v. Proximire, 443 U.S. 111, 133 (1979) (holding that legislative immunity did not apply to legislator's act of disseminating newsletters and press releases because they were "primarily means of informing those outside the legislative forum"); Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27-28 (1st Cir. 1994) (concluding that legislators were not entitled to legislative immunity from suit challenging decision to discharge a librarian).

In Harwood, a group of organizations sued the Speaker of the Rhode Island House of Representatives, as well as the House's head doorkeeper, seeking to enjoin the enforcement of a House rule. See Harwood, 69 F.3d at 624-25. The House rule purported to ban lobbyists from the floor of the House while the House was in session. See id. The First Circuit held that both the Speaker and the doorkeeper were immune from plaintiffs' suit under the doctrine of legislative immunity. See id. at 635.

9

The Court explained that, because plaintiffs' suit challenged "a procedural rule adopted by a house of the legislature as a whole for the management of its own business," plaintiffs were entitled to immunity if the rule was "more than 'casually or incidentally related' to core legislative functions." Id. at 631 n.9 (quoting Brewster, 408 U.S. at 528). The First Circuit ultimately found it "beyond serious dispute" that the rule was closely related to core legislative functions. Id. at 632. By restricting who may enter the House floor during legislative sessions, the rule "necessarily affects the manner in which the House conducts its most characteristic legislative functions," i.e., "debating and voting." Id. "A rule that colors the very conditions under which legislators engage in formal debate is indubitably part and parcel of the legislative process, and the acts of House officials . . . in enforcing it are therefore fully protected against judicial interference by the doctrine of legislative immunity." Id.

Harwood stands for the proposition that, "[w]here . . . a legislative body adopts a rule, not invidiously discriminatory on its face, that bears upon its conduct of frankly legislative business . . . the doctrine of legislative immunity must protect [officials] who do no more than carry out the will of the body by enforcing the rule as part of their official duties." Id. at 631 (citation omitted). This includes rules that regulate "the very atmosphere in which lawmaking deliberations occur." Id. at 633 (quoting Walker v. Jones, 733 F.2d 923, 930 (D.C. Cir. 1984)).

Harwood is binding precedent on this court and compels a finding that the Speaker is immune from plaintiffs' suit. According to Rule 786 of Mason's

10

Manual—which has been adopted by a vote of the House and which is applicable to House proceedings via House Rule 65—remote participation in floor sessions of the House is prohibited unless specifically authorized by the Constitution or another House rule.  The plaintiffs have not identified any constitutional provision or House rule specifically authorizing remote participation in floor sessions, and the court is unaware of any such provisions or rules.  But cf. Opinion of the Justices (Quorum under Part II, Article 20), 2020 WL 6750797, at *1 (N.H. Nov. 17, 2020) (concluding in an advisory opinion that remote House sessions would not violate quorum provision of State Constitution).  And although the House has permitted remote participation by its members at committee meetings throughout the pandemic, plaintiffs have not identified a "custom" of remote participation in floor sessions of the House.  Indeed, it is undisputed that all House sessions have been in-person since the onset of the COVID-19 pandemic.  And while Plaintiffs argue that the House does not strictly enforce House Rule 65 or applicable rules from Mason's Manual, it is not the role of this federal court to pick and choose among competing understandings of the internal rules of a state legislative body.  See Starr v. Governor, 154 N.H. 174, 178 (2006) (concluding that, under Part II, Article 22 of the State Constitution, the House "has complete control and discretion whether it shall observe, enforce, waive, suspend, or disregard its own rules of procedure").

Like the rule barring lobbyists from the floor of the Rhode Island House of Representatives that was challenged in Harwood, the at-issue rule prohibiting remote participation in House sessions regulates "the very atmosphere in which

11

lawmaking deliberations occur." Harwood, 69 F.3d at 633 (quotation omitted). Moreover, Rule 786 is "not invidiously discriminatory on its face" as it applies equally to all members of the House. Id. at 631. In denying Individual Plaintiffs' requests to participate remotely at House sessions, the Speaker did no more than enforce a "rule that colors the very conditions under which legislators engage in formal debate." Id. at 632. He is therefore immune from plaintiffs' suit.

Plaintiffs' arguments do not persuade the court otherwise. Plaintiffs contend that the Speaker is not entitled to legislative immunity because he is being sued in his official capacity (i.e., for injunctive relief), rather than his personal capacity (i.e., for damages). However, the First Circuit explicitly stated in Harwood that legislative immunity applies regardless of whether the plaintiff seeks prospective relief or damages. See id. at 630 (quoting Consumers Union, 446 U.S. at 731). This statement finds support in Supreme Court precedent recognizing that legislative immunity applies in official capacity suits seeking injunctive relief, as well as identical rulings of numerous other circuit courts. See Consumers Union, 446 U.S. at 731; Church v. Mo., 913 F.3d 736, 754 n.3 (8th Cir. 2019) ("[U]nder Consumers Union, legislative immunity applies to official-capacity suits." (citation omitted)); Rowland, 494 F.3d at 88 (holding that "claims for injunctive relief against . . . state officials, sued in their official capacities, may be barred by the doctrine of legislative immunity"); Scott, 405 F.3d at 1255 ("[W]e hold that the legislator defendants in the instant official capacity suit for prospective relief are entitled to absolute immunity."); Larsen v. Senate of Commonwealth of Pa., 152 F.3d 240, 244, 254 (3d

12

Cir. 1998) (concluding that state legislators sued in their official capacities "were entitled to the protections of legislative immunity from suit for [plaintiff's] claim for prospective injunctive relief"); Risser v. Thompson, 930 F.2d 549, 551 (7th Cir. 1991) ("Legislators' immunity is absolute . . . and extends to injunctive relief as well as to damages suits." (citation omitted)); Abick v. State of Mich., 803 F.2d 874, 876-78 (6th Cir. 1986) (holding, in suit for damages and injunctive relief, that justices of the Michigan Supreme Court had legislative immunity from suit relating to their promulgation of a challenged court rule regarding service of process).

Plaintiffs assert a nuanced argument that, as the court understands it, is as follows. Plaintiffs argue that cases applying legislative immunity to official capacity suits do so when claims are brought against the state (or a state official sued in his "official capacity") pursuant to 42 U.S.C. § 1983, a federal civil rights statute. The case of Ex parte Young, 209 U.S. 123 (1908), establishes a legal fiction applicable to such cases. Broadly stated, the fiction permits the state to be sued in one narrow circumstance: where the plaintiff seeks only prospective injunctive relief (and not damages). See, e.g., Va. Office for Prot. & Advocacy v. Stewart, 563 U.S. 247, 254-55 (2011) (explaining the Ex parte Young doctrine). In those cases, the Ex parte Young fiction operates to sever the official capacity defendant from the state. That legal fiction is necessary because Congress did not abrogate sovereign immunity when it enacted § 1983. See Quern v. Jordan, 440 U.S. 332, 345 (1979). Thus, the Ex parte Young doctrine permits a lawsuit against a state official in that narrow circumstance. Plaintiffs assert that, although the

13

state (or state officials sued in their official capacities) ordinarily cannot claim personal immunities (such as legislative immunity), an official capacity defendant can claim legislative immunity when Ex parte Young operates to sever the defendant-official from the state.

Plaintiffs argue that no such severing is necessary here. Rather, plaintiffs argue that, unlike § 1983, Congress abrogated sovereign immunity when it passed the ADA. See 42 U.S.C. §§ 2000d-7, 12133; 29 U.S.C. § 794(a); see also United States v. Georgia, 546 U.S. 151, 159 (2006). And, as to their Rehabilitation Act claim, plaintiffs argue that sovereign immunity is not available because, by accepting federal funds, the state waived sovereign immunity as to claims under that Act. Because, plaintiffs argue, sovereign immunity does not apply in this case, plaintiffs eschew reliance on Ex parte Young and assert that the Speaker— sued in his official capacity— is the state. Thus, plaintiffs argue that their claims under Title II of the ADA and the Rehabilitation Act are qualitatively different from claims brought under § 1983, and the defense of legislative immunity as permitted in those cases does not apply here.

The court is not persuaded by plaintiffs' argument for several reasons. First, a basic premise of legislative immunity is that it applies to acts, not actors. See, e.g., Bogan, 523 U.S. at 54-55. "Absolute legislative immunity 'is justified and defined by the functions it protects and serves, not by the person to whom it attaches.'" Romero-Barcelo, 75 F.3d at 29 (quoting Negron-Gaztambide, 35 F.3d at 27); accord Acevedo-Cordero v. Cordero-Santiago, 958 F.2d 20, 21 (1st Cir. 1992)

14

("[I]t is the nature of the particular act rather than the title of the office which governs whether immunity attaches."). As noted, various arms of the state itself—such as courts and legislatures—may claim legislative immunity for actions taken in a legislative capacity. See Consumers Union, 446 U.S. at 733; Hall, 974 F. Supp. 2d at 957. Thus, even if the Speaker in this official-capacity action is properly characterized as the state, that would not preclude a claim of legislative immunity under binding Supreme Court precedent. See Consumers Union, 446 U.S. at 733; see also Rowland, 494 F.3d at 86-87 (rejecting reasoning similar to that advanced by the plaintiffs and holding that "we are unwilling to ignore the Supreme Court's squarely-applicable precedent in Consumers Union because of broadly stated" pronouncements in other cases regarding personal immunities in official capacity suits "not specifically referring to legislative immunity").

In addition, although plaintiffs are correct that cases applying legislative immunity to official capacity actions have often involved § 1983, the reasoning in those cases is not specific to § 1983. Many cases emphasize that applying legislative immunity to suits for prospective relief furthers a key goal of the doctrine: protecting those who exercise a legislative function from the distractions and costs of litigation. See, e.g., Consumers Union, 446 U.S. at 733; Scott, 405 F.3d at 1256. Furthermore, because the legislative immunity afforded state actors is a creature of federal common law, see Harwood, 69 F.3d at 629, there is no reason to conclude that it would apply in § 1983 actions but not others—absent abrogation of legislative immunity by Congress.

15

Although plaintiffs argue that Congress abrogated legislative immunity for Title II and Rehabilitation Act claims, they only identify evidence that Congress intended to abrogate <u>sovereign</u> immunity under these Acts.  The court is not persuaded by Plaintiffs' argument that an intent to abrogate legislative immunity can be inferred from an intent to abrogate sovereign immunity.  See <u>United States v. Texas</u>, 507 U.S. 529, 534 (1993).  And plaintiffs have not provided—nor has the court located—any case holding that legislative immunity is inapplicable to Title II or Rehabilitation Act claims.  To the contrary, several courts have applied legislative immunity to bar Title II and Rehabilitation Act claims, some of which sought injunctive relief.   See <u>McCleary-Evans v. Md. Dep't of Transp.</u>, 2015 WL 1285325, at *23 (D. Md. Mar. 20, 2015); <u>Kobe v. Haley</u>, 2013 WL 4056335, at *1-2, *4-5 (D.S.C. Aug. 12, 2013) (seeking injunctive relief); <u>Am. Ass'n of People With Disabilities v. Smith</u>, 227 F. Supp. 2d 1276, 1280 n.5, 1295, 1297 (M.D. Fla. 2002) (seeking injunctive relief).

In summary, the court concludes that the Speaker is immune from plaintiffs' suit challenging his enforcement of a House rule that is closely related to core legislative functions.  See <u>Harwood</u>, 69 F.3d at 631-33.  For that reason, the court must deny plaintiffs' request for a temporary restraining order or preliminary injunction.  See <u>Arborjet</u>, 794 F.3d at 173.

## CONCLUSION

Plaintiffs' motion for a temporary restraining order or preliminary injunction (doc. no. 2) is denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

February 22, 2021

cc: Counsel of Record

17